IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DAVID BROWN,

          Plaintiff,

vs.                          Case No. 09-1331-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

          Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the

1

conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

**II. History of case**

On May 20, 2009, administrative law judge (ALJ) Michael A. Lehr issued his decision (R. at 11-18). Plaintiff alleges that he has been disabled since May 17, 2004 (R. at 11). Plaintiff is insured for disability insurance benefits through December 31, 2011 (R. at 13). At step one, the ALJ found that plaintiff engaged in substantial gainful activity until January 1, 2008 (R. at 13). The ALJ found that plaintiff was disabled as of January 1, 2008 (R. at 18).

**III. Is the ALJ's finding that plaintiff was engaged in substantial gainful activity prior to January 1, 2008 supported by substantial evidence?**

Substantial gainful activity is work which is both substantial and gainful.  They are defined as follows:

> (a) *Substantial work activity*. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.
>
> (b) *Gainful work activity*. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

20 C.F.R. § 404.1572 (2010 at 396).

For self-employed individuals, the regulations provide specific guidance in determining whether a person is engaged in substantial gainful activity.  The regulations are as follows:

> (a)(2) *General rules for evaluating your work activity if you are self-employed*. <u>We will consider your activities and their value to your business to decide whether you have engaged in substantial gainful activity if you are self-employed. We will not consider your income alone because the amount of income you actually receive may depend on a number of different factors</u>, such as capital investment and profit-sharing agreements...We will evaluate your work activity based on the value of your services to the business regardless of whether you receive an immediate income for your services. <u>We determine whether you have engaged in</u>

5

<u>substantial gainful activity by applying three tests. If you have not engaged in substantial gainful activity under test one, then we will consider tests two and three.</u> The tests are as follows:

(i) *Test one*: You have engaged in substantial gainful activity if you render services that are significant to the operation of the business and receive a substantial income from the business. Paragraphs (b) and (c) of this section explain what we mean by significant services and substantial income for purposes of this test.

(ii) *Test Two*: You have engaged in substantial gainful activity if your work activity, in terms of factors such as hours, skills, energy output, efficiency, duties, and responsibilities, is comparable to that of unimpaired individuals in your community who are in the same or similar businesses as their means of livelihood.

(iii) *Test Three*: You have engaged in substantial gainful activity if your work activity, although not comparable to that of unimpaired individuals, is clearly worth the amount shown in § 404.1574(b)(2) when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work you are doing.

(b) *What we mean by significant services.*

(1) If you are not a farm landlord and you operate a business entirely by yourself, any services that you render are significant to the business. <u>If your business involves the services of more than one person, we will consider you to be rendering significant services if you contribute more than half the total time required for the management of the business, or you render management services for more than 45 hours a month regardless of the total management time required by the</u>

        business.

20 C.F.R. § 404.1575 (2010 at 403, emphasis added).

    The ALJ's relevant findings on this issue are as follows:

> The claimant submitted an application for disability benefits in October 2007 reporting an inability to work since May 17, 2004 (exhibit 2D). However, on the function report dated February 26, 2008, he stated that he had to close his construction company as he could no longer be on the job (exhibit 2D/8). At the hearing held on March 23, 2009, he reported that the business closed with December 2007. This is supported in a review of the earnings record which reflects substantial gainful activity posted through 2007 (exhibit 7D).
>
> The claimant completed a self-employment/ corporate officer questionnaire dated October 1, 2007 reporting that he was closing the business at the end of the year. He also reported that on May 17, 2004, his father started making all the decisions regarding the construction business and his responsibilities were reduced to about 5 percent, noting he might spend about an hour a day on decisions. He listed his father as president, himself as vice-president and his mother as secretary with each owning .25 of the stock (and no reference to who owned the remaining .25). He and his father each received a salary and his mother did not receive a salary (exhibit 1D).
>
> The claimant also completed a disability report in connection with the application stating that his work was construction/ remodeling work and reporting that he supervised 10 people, while noting that he performed some work and spent about 50 percent of his time supervising employees (exhibit 4E).
>
> At the hearing, the claimant testified that his father took over the business for him,

7

presumably in 2004. The claimant did continue to act for the company reporting that he would take calls from his Dad and answer questions about work. Following the hearing, counsel submitted a letter brief that the claimant's work was subsidized referencing 20 CFR 404.1574 and Social Security Ruling 83-33. It is noted that these references are for employees, rather than self-employed individuals or owners of corporations. 20 CFR 404.1575 and Social Security Ruling 83-34 are similar and refer to self-employed individuals. Counsel noted that his arrangement was similar to a savings account noting that he had built up the business and was withdrawing his investment (exhibit l5E).

A review of the medical record notes that despite his injuries, the claimant remained fairly active from the alleged onset date until January 2008. In June 2004, the claimant told Dr. Melhorn that he did supervisory work and some carpentry work (exhibit 5F/30). The claimant fractured his left arm in August 2004 working with his horses. On September 14, 2004, Dr. Melhorn told the claimant he could return to work with a cast (exhibit 5F/20). He had rotator cuff surgery in April 2005 and was released to work on May 9, 2005 (exhibit 5F/10). On December 15, 2005, Dr. Grant noted that the claimant remained active as a carpenter who also worked with horses (exhibit 4F). Treatment notes indicate that the claimant was doing mowing in June 2006 and was riding horses in March 2007 (exhibit 7F/4, 23). On the disability report submitted in February 2008, he reported that his pain worsened and he increased his medication in January 2008 (exhibit 12E/2) which is consistent with when he closed down the business.

A review of all the evidence does not establish that the claimant's work or earnings were below substantial gainful activity until after the business was closed in December 2007. He did not file for

> benefits until October 2007 when he was
> beginning to close down the business. The
> regulations state that a person is engaged in
> substantial gainful activity if they render
> significant services to the business and
> receive a substantial income from the
> business, or if their work is comparable to
> an unimpaired individual in a similar
> business or if not comparable to an
> unimpaired individual it is clearly worth the
> amount shown when considered in terms of its
> value to the business.
>
> Overall, a review of all the evidence
> indicates that the claimant remained active
> in the business from the alleged onset date
> through December 2007. This was supported in
> a review of the medical and non-medical
> evidence. The claimant was 47 years old when
> he reports his father took over the business
> operation. The claimant did not submit any
> tax returns or records, corporation minutes,
> records from clients or customers, or any
> other evidence that would establish he was no
> longer involved in the business.
>
> It is finally noted that the claimant
> protectively filed for benefits in September
> 2007 and that benefits are only retroactive
> for 12 months from the date of application
> regardless of the alleged onset date.

(R. at 14-15).

Plaintiff alleges disability beginning on May 17, 2004. Plaintiff stipulates that he was receiving "substantial income" from the alleged onset date through the closing of the business at the end of 2007 because he continued to receive a salary even when he was not working or working very little (Doc. 9 at 7; R. at 29-31, 41-44). Plaintiff indicated that his father took over the business after he became disabled (R. at 106-107).

As noted above, the regulations provide three tests that the ALJ can apply to determine if a self-employed person is engaging in substantial gainful activity (SGA). Although the ALJ mentioned all three tests in a summary fashion (R. at 14), he failed to indicate what test or tests he was using to determine if plaintiff was engaged in SGA. Defendant concedes that the ALJ failed to specifically state what test he applied (Doc. 15 at 6).

Defendant argues that the language of the ALJ's decision indicates that the ALJ analyzed plaintiff's work using test one (Doc. 15 at 6). According to test one, a person is engaged in SGA if they: (1) receive a substantial income from the business, and (2) if they render services that are significant to the operation of the business. Plaintiff stipulates that he received a substantial income from the business.

The remaining issue is whether plaintiff rendered services that are significant to the operation of the business. Because the business involved the services of more than one person, significant services is defined as either: (1) the person contributes more than half the total time required for the management of the business, or (2) the person renders management services for more than 45 hours a month regardless of the total management time required by the business.

However, the ALJ made no finding as to whether the plaintiff contributed more than half the total time required for the

10

management of the business, or if plaintiff rendered management services for more than 45 hours a month. The ALJ did not even make a finding that plaintiff engaged in significant services for the business. Although the ALJ summarized evidence indicating that plaintiff did some work between May 17, 2004 and December 31, 2007, none of the evidence cited by the ALJ indicates that plaintiff either contributed more than half the total time required for the management of the business, or that plaintiff rendered management services for more than 45 hours a month.[1]

Furthermore, the ALJ cited to a May 9, 2005 medical record, which, according to the ALJ, indicated that he was released to work (R. at 14). However, the record from May 9, 2005 cited by the ALJ actually states that plaintiff "is back to a modified

---

[1] Defendant, in his brief, cited to other evidence indicating that plaintiff performed some work from May 17, 2004 through December 31, 2007 (Doc. 15 at 7-8). First, an ALJ's decision should be evaluated based solely on the reasons stated in the decision. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). A decision cannot be affirmed on the basis of appellate counsel's post hoc rationalizations for agency action. Knipe v. Heckler, 755 F.2d 141, 149 n.16 (10th Cir. 1985). A reviewing court may not create post hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision. Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005). By considering legal or evidentiary matters not considered by the ALJ, a court risks violating the general rule against post hoc justification of administrative action. Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004). Second, the evidence cited in defendant's brief does not indicate that plaintiff either contributed more than half the total time required for the management of the business, or that plaintiff rendered management services for more than 45 hours a month.

11

work as tolerated" (R. at 321).

The ALJ made a finding that plaintiff remained "active" in the business during this time period. However, being "active" in the business does not establish whether the person performed "significant services" for the business as required by test one, and defined in § 404.1575(b)(1), especially when the ALJ failed to make a finding that plaintiff contributed more than half the total time required for management of the business, or rendered management services for more than 45 hours a month.

Plaintiff stated that his responsibilities amount to about 5% of the business making decisions and that he spent about 1 hour a day helping make decisions (R. at 106). The ALJ did not cite to any evidence indicating that plaintiff either made more than 5% of the business making decisions or spent more than 1 hour a day helping make decisions. The ALJ never indicated that he was applying test one, he did not make a finding that plaintiff engaged in "significant services," nor did he cite to any evidence which would indicate that plaintiff's activities met either definition of "significant services."

The court finds that the ALJ's failure to make findings on any of the three tests constitutes error as a matter of law and requires this court to remand to the ALJ for an analysis under 20 C.F.R. § 404.1575. Gaudreau v. Commissioner of Social Security, 160 F. Supp.2d 285, 293 (D. Conn. 2001); see Brown v. Astrue,

12

2008 WL 5232797 at *3 (N.D. Tex. Dec. 12, 2008)(case remanded for further hearing when the court held that the ALJ made no findings regarding the amount of time plaintiff devoted to the management of the business or whether plaintiff's management time constituted more than half the total time required for management of the business).[2]

---

[2]In the case of Verduchi v. Astrue, 2009 WL 30307 at 4-5 (D. R.I., Jan. 5, 2009), cited by the defendant, the ALJ in that case, unlike the case presently before the court, made a specific finding that plaintiff met test one. Furthermore, there was evidence in that case showing that the claimant worked 3-4 hours a day, which would be well above 45 hours a month. The ALJ found that plaintiff's testimony regarding minimal managerial involvement in the business was not credible in light of the evidence. Thus, unlike the case before the court, there was a finding by the ALJ and evidence in Verduchi that the claimant was engaged in significant services to the business.
    In the case of Rupe v. Chater, 1996 WL 131665 at *1-2 (10th Cir. March 25, 1996), cited by the defendant, the claimant took from half to the entire day to set up the food concession trailer, and spent a maximum of two hours a day on other operations of the business (researches events, deciding which ones to apply for, making necessary phone calls and obtaining proper permits). The ALJ found that claimant "clearly bears almost the entire responsibility for the operation of the business." The claimant's mental activities were also described as "pivotal to the business." Thus, unlike the case before the court, there was evidence that the claimant in Rupe worked more than 45 hours a month and that he was engaged in significant services to the business.
    In the case of Fowler v. Bowen, 876 F.2d 1451, 1454 (10th Cir. 1989), cited by the defendant, the claimant was found to be at all times in question the primary and only continuing personality in his insurance business; he made decisions, hired employees, trained employees, formed a corporation and used corporate funds for personal expenses. He was considered by the president of an insurance company that contracted with the plaintiff as "fully employed." The ALJ found that claimant rendered significant services to the corporation because his work was necessary and responsible for the generation of any profits accrued by the corporation. Thus, unlike the case before the

13

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 10th day of December, 2010, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge

---

court, there was a finding by the ALJ and evidence that the claimant in Fowler was engaged in significant services to the business.

Finally, in the case of Dolbashian v. Secretary of HHS, 688 F.2d 4, 5-6 (1st Cir. 1982), also cited by the defendant, the claimant's mental activities were found to be "pivotal to the business." The court stated that "his knowledge and advise have contributed in an important way to the operation of the business." Claimant himself stated that the business is based "solely on my knowledge of the business" and that "my mental ability and knowledge of the business is valuable to the business." Thus, unlike the case before the court, there was evidence that the claimant in Dolbashian was engaged in significant services to the business.